Good morning Judge Nelson, Judge Kaczynski, and Judge McEwen. My name is Jeffrey Angel. I'm an attorney from Bozeman, Montana. This case is a case under the State Wrongful Discharge from Employment Act. The district court dismissed the case on summary judgment finding an absence of disputed facts. And this is what the court wrote in its order. Although disputed, when plaintiff rejected the defendant's job offer, he terminated his employment with the defendant on April 21, 2000. In brief summary, the case is a situation where a gentleman works at a local shopping mall. There is what appears to be free-flowing asbestos coming out of the walls. OSHA comes in and does an inspection. He cooperates with that inspection, and the employer's immediate reaction is to take away the keys, take away the pager, tell him he cannot have any contact with his co-workers, he cannot re-enter the premises, and he must accept an immediate, meaning the following day, that he could not re-enter the premises, that he must take a job immediately in Toledo, Ohio. Let me ask a question about that. One of the options was that he, they said he could go there and spend three or four weeks and see if he liked it. Was there a promise that if he didn't like it, he could come back? My understanding... I couldn't find anything in the record about that. My understanding in the record is that if he didn't like it, he could come back and not have a job. The real issue, because the court expressed the two questions, and I think this gets to that, was the plaintiff discharged under the Act, and if the plaintiff was discharged, was the discharge wrongful? I think the idea of whether he came, if he didn't like it after three or four weeks and he returned, would he have a job, gets to the idea of whether it's reasonable and whether it's a discharge to give an ultimatum like that. In your view, does this issue of public policy, that is, potential discharge because he was a whistleblower with respect to OSHA, does that public policy issue come into figuring out whether there was a discharge or to pretext or both? I think both, because what the court didn't analyze, I think they could have given him the best deal in the world as far as we'll give you a million dollars to go to Washington, D.C. I mean, they could have given him the greatest job offer in the world, something that would be fabulous for him, fabulous for his family, but if the option is take it or you're going to be fired, and he doesn't want to go along with that because he thinks they're trying to secret him away from the OSHA investigators and says, I'm not going to cooperate, wow, it would be great, but it's not something I feel comfortable doing, and they turn around and fire him because he won't. I think it both goes to the factual question. In this situation, did they discharge him, and was that discharge wrongful? The court analyzes that two-factor, or the two questions, was he discharged, and they stop there, because they say, under the disputed facts, we're going to find it wasn't a discharge. I mean, ultimately, the term discharge in this act is pretty broad. It says a discharge, a constructive discharge, or any other termination of employment, any other termination of employment, including resignation, elimination of the job, layoff for lack of work, failure to recall, rehire, cut back in the number of employees. All of those things, and it seems to be an exhaustive list of any type of separation from employment, is included within the definition of discharge, but then, ironically, the district court found it didn't need to look at the factual issue of whether the discharge was wrongful because it concluded that his not working at that company anymore did not meet the definition of a discharge, and I can't explain that, and I can't find any rationale. Well, it's just that he said it was a lateral transfer, and they gave him a raise. In contrast to the other cases where they either cut the salary or they added a raise, added a bonus, and the district court judge said, look, this is a lateral transfer. He read the handbook. The handbook says he's subject to transfer. Therefore, this isn't a discharge. Correct. They said immediately barring you from the premises when you get an increase in pay and an opportunity to move across the country away from the family, and that was one of the factual issues is whether or not he had family obligations that prevented him from accepting even if he wanted to, but they concluded, the district court did, because there was an increase in pay. He took a job that said transfer would be a possibility. Correct. So he accepts the job. It's clearly laid out that people, employees can be transferred, and they transfer him. They say, you know, transfer on very favorable terms, a raise, a possibility of more raises. I don't see where the employer is required to negotiate this. If they need somebody transferred and the manual says employment is offered and accepted with this as a term, I can't see where it then becomes a discharge for them to do exactly what the manual says is part of the deal. And my argument at this stage is that the jury may conclude that. The jury may look at these facts, the immediacy, the requirement that he can't talk to co-employees, the requirement that tomorrow, you know, just because an employer tells you, we may ask you to go other places in the country and you don't necessarily have to accept. Does that automatically mean because they made an offer they're not doing it in retaliation for the OSHA inspection? And the facts that we put forward to get to a jury were that they instantly, when they found out he talked to the inspectors, took away his keys, took away his pager. Did they say anything to him? Did they express any happiness? I mean, was there any direct evidence? The only thing they said is you can never go in the premises again, talk to your employees, and you must leave tomorrow. They didn't come forward and tell him and were really upset that you talked to the OSHA investigators. Did they say they were upset at all? Pardon? Did they express any, was there any connection, anything said at all that tied into the investigation? No, and my suspicion, if an employer was going to follow in the footsteps of this case, they wouldn't. They would just make some offer of alternate employment immediately tomorrow, including barring the employee from talking to the employees. It's the only way to accomplish keeping the person from cooperating with OSHA. He'd been told to deny, deny, deny. That was one of the facts. That does tie it in, and your main point is that there shouldn't be summary judgment if you go to the jury. The court looked at the two issues. Was he discharged? Was it wrongful? And the facts certainly meet, because this is the only thing we're asking to have reversed, the facts certainly show that he fits within the definition of discharge because it was either a discharge, constructive discharge, or any other termination of employment. And I'm saying that the facts will additionally get us to the, get the jury to have an opportunity to look at that second question. And the inference of timing is something, you don't need direct evidence under our law, correct, in terms of whether or not it was retaliatory? Correct. There doesn't need to be any direct evidence, but it certainly would be a reasonable presumption when you add the additional faxes of he can't talk to any of his co-employees and he can't reenter the premises and he has to leave tomorrow morning. Those three facts tend to make you think that there's something more going on than they really wanted in Toledo. They're opening up a new operation there. They wanted him to be, they said they wanted him to be manager in Toledo, Ohio tomorrow morning. They're opening up a new operation. This wasn't a sort of ongoing operation. There was no discovery into that. I believe that that was their allegation and we accept it as true. They wanted him or they said they wanted him to go to Toledo, Ohio, and we accept that as the supposed legitimate business reason. The issue, though, really is was he discharged. That's as far as the court got. They concluded that because he was offered some money and offered to immediately go to Toledo, which of course means picking up your family, and he expressed that that's not an option. They said, well, there you go. You're fired. Or you quit. That was a distinction they made is that if you're not accepting our offers, then we're telling you you're quitting. And it gets down to, again, does that amount to discharge, constructive discharge, or any other termination of employment? The court said this isn't a constructive discharge. They didn't look at the other types of things that could mean discharge. They just said it wasn't a constructive discharge. But if you look at the facts, they are doing a factual weighing. They're saying it's more money. But more money, you could double my salary and move me to Seattle, and I would still be financially better off in Bozeman at half the salary because the costs are so low there. We never got into an analysis of how. You have better weather here. Pardon? You have better weather. We have better weather here, yes. Ultimately, the court, and I'll end with this, decided that the fact that it believed there was not a constructive discharge in its balancing of the facts meant that it could not be any other termination of employment. That decision was a factual balance and a conclusion of law that we believe was incorrect. Thank you. Okay, thank you. We'll hear from the public side. May it please the Court. Good morning, Your Honors. My name is Brooke Murphy, and I am here today on behalf of Service Management Systems. Before I begin, I'd like to state that this is my first opportunity to appear before the Ninth Circuit, and what an honor it is to be here today. Appellant contends that the District Court erred when it granted summary judgment to Service Management Systems because there is an issue of fact regarding his termination. Your Honors, there is no issue of material fact regarding Mr. Wilkinson's choice to terminate his employment at Service Management Systems. There is absolutely nothing on the record supporting Appellant's contention that the offer of a lateral transfer was in any way connected to the OSHA investigation. There is not one document. Well, it was the day after he said, when OSHA said, have you shown us everything, and his court had said, deny, deny, deny, and he said, I want to tell the truth. No, we haven't shown you everything, and led them to where the asbestos was. The very next day, turn in your keys, leave, don't talk to other employees. How can you say it's not connected? Well, Your Honor, I will concede that there is a temporal relationship between the offer of a lateral transfer and the OSHA investigation, although I think it was two days as opposed to one. However, this issue is not... Two days to move your household and family? I mean, seven weeks or eight weeks or a month might have been, but within three days, you're out of here and you are moving? Your Honor, I do not feel that this... Your question is a valid one, obviously, and there is a question as to the temporal relationship between the offer of a lateral transfer and the OSHA investigation. Isn't that precisely now the kind of inference that you put before the jury and let them decide whether it's a coincidental temporal relationship or an intentional one? Isn't that really the factual issue the jury needs to decide? And there would be a factual issue if the issue was what was Service Management System's reason or motivation for the offer of a lateral transfer. But the simple fact is, under Montana's Wrongful Discharge from Employment Act, an appellant has a duty to first establish that there was a discharge. In the absence of a discharge, there is no application under the Wrongful Discharge from Employment Act. An appellant must explore other remedies. In this case, there was no discharge. The undisputed facts are few, and they are directly analogous to the Montana Supreme Court's holding in Finstead v. Montana Power Company. Let me interrupt you right there. In the Finstead case, it involved a claim under an implied covenant of good faith and fair dealing, not the WDEA. Why should its ruling be controlling here? Yes, Your Honor, that is correct. However, the issue was the same. The issue in Finstead was, was there either a constructive or an actual discharge, and that is the issue before this court today and before the district court below. Was there a discharge? The analysis is the same, and that is why the Finstead... You said you're bound by Finstead. We're not really bound by Finstead. I mean, the Montana courts, if you're now under a statute, isn't that correct? Are you saying the same reasoning applies? Well, Your Honor, I believe the same reasoning applies in that the Montana Supreme Court would follow its analysis in Finstead because it is so analogous to the facts before this case, before this court today. And those facts... Let me tell you what my concern is about your position. If you take your position literally, one could never have a wrongful discharge case, the reason being that as long as the employer gives you a lateral transfer, you'll never be able to prove or have an opportunity to argue that it was in retaliation or in violation of public policy. So if we take your position as stated, how would one ever be able to, in this Hobson's choice of lateral transfer or quit, be able to ever establish a prima facie case of wrongful discharge that was against public policy? Your Honor, he or she may not be able to establish a case of discharge, and that is something that perhaps needs to be addressed by the Montana Supreme Court. You see, if you look at why that law was changed, because the implied covenant of good faith had a fair amount of jelly in terms of its interpretation, isn't the purpose of this wrongful discharge law so that someone who is wrongfully... who is given an adverse employment action that's wrongful has a cause of action? I mean, it doesn't make sense to me to say, well, you can have a cause of action somewhere else. That's what this law is for. Because that's what the Montana legislature said. Your Honor, I disagree. This law is for... allows a plaintiff to have a cause of action in the situation where they are discharged. The facts of this case show the plaintiff or appellant was not discharged. He was offered a lateral transfer, complete with a raise, bonus potential, benefits, a 10% raise, an additional 10% raise in six months. Had the service management systems been intending to remove him from employment situations because of his cooperation with OSHA, then they wouldn't have offered him another position at a brand-new location and put their trust in him. What about allegations that he was told not to talk to other employees and he was locked out? Yes, Your Honor. I mean, that's not usually what happens when there's a geographic transfer. Usually what happens is employees give him some time to think about it. But I'm willing to assume that they had an emergency need for the employee or hired because he was stuck in a new store, and they might say, look, you don't have much time to think about it, we need somebody very quickly. That I'm sort of prepared to believe, but I can't... I have much more difficulty believing that there's any need connected to the transfer to say you can't go back and clean out the desk or you can't go back and talk to anybody or lock anyone in this facility. That seems to have no relationship at all to any legitimate need of an employer. Your Honor, at that point, in the factual scenario that happened in this case, appellant had made it clear that he was not interested in the lateral transfer and service management systems was acting in accordance with the ultimatum that it offered him or the conditional offer of a lateral transfer. Well, okay, I'm willing to go along even with that. I can sort of believe and say, okay, you know, you don't want a job, and so we're going to fire you, but he can't go and visit his friends. I don't know. Or, you know, you've got to sort of give up your keys this minute and never come here in the place again. I find that hard to tie in to any legitimate interest of an employer. I mean, that sounds a lot more like we don't want you back there making trouble. Your Honor, the plaintiff was asked to surrender his keys after he failed to accept the lateral transfer. However, there is nothing more to indicate that the offer of lateral transfer and the removal of his keys and his access to the service management systems office at Rimrock Mall, he was not barred from the premises completely. He certainly could have gone to the mall and shopped. Correct. But still, the fact that he was barred from the premises does not get appellant over the threshold issue that he was discharged. Hold on. Let's say, in fact, they have a legitimate reason to transfer him, and he says, no, I can't go. I don't want to go. I can't go. So, okay, and so on. It's highly unusual to just terminate somebody's employment immediately. Usually, you give notice, you give them a chance to close up their business, whatever project they might have been involved in. Sometimes, if it's a friendly situation, you get them to train the successor. You know, you're happy they're around to share information and to, you know, help the transition. And the locking out, so saying, you know, you're gone tomorrow, sounds a lot more like a hostile separation than sort of friendly. I mean, you know, if they need him in Ohio and he has to leave the next day because they need him in Ohio and he says, yes, I'm going to Ohio, I can sort of see why they would say, don't go back there, you know, but once he says, I'm not going to go to Ohio, what's the hurry to get him out of the situation here? Well, Your Honor, we don't know what the hurry was to get him out of the situation because that fact isn't on the record. But unfortunately, at this stage, we have to draw reasonable inferences in favor of the plaintiff. And one reasonable inference is that the reason they were not letting him go back there is because they didn't want him to keep cooperating with OSHA and they didn't want him to persuade other employees to do that. That's a reasonable inference. Yes, Your Honor, that is a reasonable inference, but the only thing supporting that reasonable inference is the appellant's own speculation and conjecture regarding service management. I thought it was my speculation and conjecture. Well, your speculation and conjecture, Your Honor, is on the line with the appellant. But that's a reasonable guy. It's what a reasonable person would think. You know, if you really, you know, if you need him in Ohio tomorrow and he transfers to Ohio and you say, look, you're not going back because we really need your body in Ohio, he goes to Ohio, of course he can't be back there. But once he says, I'm not going, what's the hurry? I don't get it. Why not say, okay, we'll finish up your projects, take a couple weeks, maybe we'll give you a month to find another job. You don't understand this. I don't know. Well, Your Honor, I would encourage the court to go back and look at the Montana Supreme Court's holding in Pinstead. The exact same thing happened in that case. It was the same thing in Pinstead. The employer was moving. Here, the employer was staying right there and hired another position to replace him immediately. So the facts are really different. Well, they are analogous, Your Honor, in the fact that he was not given the opportunity to go back. The plaintiff in Pinstead was not given the opportunity to go back to his desk, wrap up his work. He was asked to surrender his keys and leave the premises effective immediately. In Pinstead, the one big difference is that you didn't have retaliatory action that would be against public policy. It wasn't alleged. It was just a straight up-or-out transfer, and he says, that's not fair, and they say, hey, that's life. But you don't have a retaliatory aspect in Pinstead,  No, there is no allegation in Pinstead of a retaliatory aspect for the offer of a lateral transfer in this case. But again, I would bring you back to the Act and the elements that are required to be met for Pinstead for plaintiffs to establish a discharge. The motivation for the discharge is not relevant until a discharge has been established, and no discharge was established in this case. Thank you.
judges: D Nelson, Kozinski, McKeown